FILED

98 OCT -5 PM 3: 35

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

OCT  5 1998

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

RICHARD M. POWELL,                )
                                  )
          Plaintiff,              )
                                  )
vs.                               )     CIVIL ACTION NUMBER
                                  )
AMELIA SECURITIES, INC.,          )         98-C-0994-S
et al.,                           )
                                  )
          Defendants.             )

**MEMORANDUM OF OPINION GRANTING MOTION TO STAY**

In this diversity action for fraud, breach of contract, breach of fiduciary duties, wantonness and violation of the Alabama Securities Code, the defendants Amelia Securities, Inc. ("Amelia Inc."), and Diana L. Maness have moved to compel arbitration and for a stay pending arbitration. The rub is that the defendants are not signatories to the arbitration agreement on which they rely. However, since the court is persuaded that the arbitration clause encompasses the defendants, the motion to compel arbitration will be granted.

I

Amelia Inc. is a securities firm located in Amelia Island, Florida. Diana Maness ("Maness") is Amelia's CEO. At all times

relevant to this action, neither Amelia Inc. nor Maness was properly registered with the Alabama Securities Commission ("ASC").

Amelia Inc. is a National Association of Securities Dealers ("NASD") securities broker, located in Amelia Island, Florida, which clears its transactions and those of its customers through Ernst & Company ("Ernst") and Bear Stearns.  Thus, in industry terms, Maness is a broker dealer, Amelia Inc. is an "introducing broker," Ernst and Bear Stearns are "clearing brokers." Plaintiff Richard M. Powell is an Alabama resident.

In the summer of 1997, Maness and Amelia Inc. were recommended to Powell by a mutual acquaintance.  Based on certain representations made to Powell by Maness, he invested $350,000 with Amelia Inc.

In order to set up his account with Amelia Inc., Powell executed a Margin Agreement with Ernst and a Customer Agreement with Bear Stearns.  There is an arbitration clause in both agreements. The arbitration clause in the Ernst Margin Agreement provides:

> **The customer and broker agree, and by acting as clearing broker/margin lender, Ernst agrees, that all controversies which may arise between the parties** concerning any transaction or the construction, performance, or breach of this or any other agreement between the parties pertaining to securities and other property,

2

>   whether entered into prior, on or subsequent to the date hereof, **shall be determined by arbitration**.

Defendants' Exhibit ("DX") "A", ¶ 21A (emphasis added). The Margin Agreement also recites that

>   [I]f Ernst is not the brokerage firm listed on the upper hand corner of the Customer's monthly statement, Ernst carries the Customer's account as a clearing firm pursuant to a Clearing Agreement with the Customer's broker who is listed on the upper left hand corner of the Customer's monthly statement.

Powell's monthly statements from Ernst list Amelia Inc. in the upper left hand corner. See DX "C".

But more important is ¶ 17 of the Margin Agreement: ".... This agreement shall inure to the benefit of the Broker's and/or Ernst's present organization...." DX "A".

The arbitration clause of the Bear Stearns Customer Agreement is prominently featured:

>   **ARBITRATION. YOU AGREE THAT CONTROVERSIES ARISING BETWEEN YOU AND YOUR INTRODUCING BROKER AND/OR BEAR STEARNS, AND ANY OF YOUR OR THEIR CONTROL PERSONS, PREDECESSORS, SUBSIDIARIES, AFFILIATES, SUCCESSORS, ASSIGNS AND EMPLOYEES, SHALL BE DETERMINED BY ARBITRATION.**

DX "B", ¶ 22 (emphasis original). The Customer Agreement also informed the plaintiff that when Bear Stearns is acting as a clearing agent for his broker:

> You agree that your broker and its employees are third-party beneficiaries of this Agreement, and that the terms and conditions hereof, including arbitration provisions, shall be applicable to all matters between and among any of you, your broker and its employees and Bear Stearns and its employees.

DX "B", ¶ 9 (emphasis added). Amelia Inc. is listed as the "account executive" on monthly statements sent by Bear Stearns to the plaintiff.

According to the complaint, Amelia Inc. invested the plaintiff's money in speculative markets, without his knowledge/consent. Substantial losses were incurred. The plaintiff contends that he was unaware of Amelia Inc. and Maness' failure to register with the ASC.

On January 12, 1998, the ASC issued a Cease and Desist Order (the "Order") against Amelia Inc. As a condition of vacating the Order or becoming registered in Alabama, the ASC required Amelia Inc. to offer to rescind the transactions in the plaintiff's

account. Amelia Inc. offered, and on January 23, 1998, the plaintiff apparently accepted. However, the defendants have failed and refused to honor the plaintiff's acceptance of their rescission offer.

II

As a general rule, the courts have spurned efforts of introducing brokers to invoke arbitration clauses in agreements between the client and the clearing broker. See Arvants v. Buck, 130 F.3d 636, 640 (4th Cir. 1997); Taylor v. Investors assoc., Inc., 29 F.3d 211, 213 (5th Cir. 1994). The rationale behind the general rule is that the introducing broker, in the outset, could easily have negotiated an arbitration agreement with its client. However, if the introducing broker is a third party beneficiary to the customer-clearing broker agreement, the courts have compelled arbitration at the behest of the introducing broker. See Nesslage v. York Sec. Inc., 823 F.2d 231, 233 (8th Cir. 1987); Arvants, 130 F.3d at 636; Zeigler v. Whale Sec. Co., L.P., 768 F. Supp. 739 (N.D. Ind. 1992); Whisler v. J.H. Meyers & Co., Inc., 948 F. Supp. 798 (N.D. Ill. 1996).

5

III

It requires no considerable discussion to conclude that Amelia Inc. is the third-party beneficiary of both the Ernst and Bear Stearns agreements. In the Ernst Margin Agreement, the plaintiff expressly agreed that the contract "shall inure to the benefit of the Broker's and/or Ernst's present organization." DX "A", ¶ 17. The Bear Stearns agreement is even more explicit: it states on its face that the plaintiff's broker, Amelia Inc., is a third-party beneficiary of the contract; and in a separate provision, binds the plaintiff to arbitrate his controversies with Amelia Inc. PX "B"; ¶ 9.

As a fallback position, the plaintiff urges that his controversy with the defendants concerning the ASC recission order is not arbitrable. What the argument overlooks is that the recission relates to an "agreement [*vel non*] between the parties pertaining to securities," embraced by the Ernst Margin Agreement; and it is certainly a "controvers[y] arising between [the plaintiff] and [his] introducing broker," within the meaning of the plaintiff's Customer Agreement with Bear Stearns. The recission issue is therefore arbitrable.

By separate order, the Motion To Compel Arbitration will be granted.

DONE this _5th_ day of October, 1998.

_____
UNITED STATES DISTRICT JUDGE
U. W. CLEMON